THE HONORABLE _____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| NANCY BOYLE, GLENN HUMPHREYS, CHRISTIAN RAINEY, JEROME CONNOLLY, NICKI WEDGEWORTH, TERRY LINBLADE, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PUYALLUP and PIERCE COUNTY, <br><br> Defendants. | No. <br><br> **COMPLAINT** <br><br> 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments <br><br> Conversion <br><br> Damages and Injunctive Relief <br><br> JURY TRIAL REQUESTED |

## INTRODUCTION

People without stable, permanent housing in the City of Puyallup (hereafter "Puyallup" or the "City") and Pierce County, Washington often must live and sleep outside, placing them in precarious and vulnerable conditions. Safeguarding their possessions—including those critical to their survival—is a central part of their existence and ability to maintain health and personal safety.

Defendants Puyallup and Pierce County have disregarded the growing needs of citizens within their communities who do not have stable housing. There is a significant deficit of affordable housing in Puyallup and Pierce County with housing costs continuing to rise. Lack of affordable housing in Pierce County, as elsewhere, has reached a crisis point, causing many

COMPLAINT – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

135829395.7

people to lose their homes.  In Puyallup and eastern Pierce County, there are no year-round shelters, forcing many people to sleep and live outside.

Rather than assist this vulnerable population, Defendants (by and through their employees, officials and agents) instead often victimize them.  For example, Defendants frequently force individuals to vacate their outside homes and seize and summarily destroy their property.  These practices have become known as "sweeps," or "clean ups."  These actions deprive citizens of their shelter and life-sustaining personal possessions, and happen even when the affected individuals are present and protest these actions.  Defendants have conducted these sweeps often without giving any, or adequate and effective, notice, without offering any opportunity to challenge the carrying out of the sweeps, and without preserving the property seized for later retrieval.  Instead, Defendants simply discard and destroy the property seized. Defendants often clear entire sites, indiscriminately confiscating or destroying property and personal belongings by hand or with heavy machinery like bulldozers.

Defendants continue these sweeps in spite of clear governing legal precedent that this conduct is unlawful, and in spite of their knowledge that their actions are unlawful.[1]  Defendants' actions have caused Plaintiffs to suffer loss of their essential personal property, including tents, clothing, shoes, bedding, tools, cooking equipment, medicines, employment resources, important legal paperwork, identification information critical to their physical and mental health, and other possessions.  Defendants have thereby violated, and continue to threaten to violate, Plaintiffs' rights under the United States Constitution and under Washington common law.  To redress these violations, Plaintiffs seek equitable relief and damages pursuant to 42 U.S.C. § 1983 for unlawful seizure and deprivation of property without due process, and also damages for conversion and intentional infliction of emotional distress under state law.

---

[1] While there are many court decisions in the Ninth Circuit and elsewhere enjoining, and awarding damages for this type of behavior, the prominent governing case in this Circuit is *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012).

COMPLAINT – 2

135829395.7

**JURISDICTION AND VENUE**

1. This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the past and ongoing violations by Defendants of Plaintiffs' rights secured by the Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because these state claims are related to the federal claims, arise out of the same or related facts, and are part of the same case or controversy. Venue is appropriate in this District because all parties reside or are present in, and the causes of action occurred in, the Western District of Washington. 28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiffs Nancy Boyle, Glenn Humphreys, Jerome Connolly, Christian Rainey, Nicki Wedgeworth, and Terry Linblade are, and were at all relevant times, residents of the State of Washington, Pierce County.

4. Defendant Puyallup is a political subdivision and municipal corporation of the State of Washington. Puyallup is a legal entity with the capacity to sue and be sued. Puyallup is sued in its own right and (1) on the basis of the acts or omissions of its officials, agents, and employees who were following certain of the City's policies and practices, and (2) on the basis of the City's practice of authorizing its officials, agents and employees to violate certain other written policies designed to protect persons without stable housing.

5. Defendant Pierce County is a political subdivision of the State of Washington. Pierce County is a legal entity with the capacity to sue and be sued. Pierce County is sued in its own right and on the basis of the acts or omissions of its officials, agents, and employees who were following the County's policies and practices.

6. All of the acts and omissions complained of herein were done by Defendants or Defendants' officials, employees and agents, within the scope of their employment or agency,

COMPLAINT – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

and under color of law. These acts and omissions were official acts of Defendants and were caused by policies, practices and conduct of Defendants, or were ratified by Defendants.

7. The acts complained of herein were intentionally committed, and will continue to be committed by Defendants unless restrained by this Court.

**FACTUAL ALLEGATIONS**

**A.   The Housing Crisis in Pierce County and Puyallup**

8. People living in Pierce County and Puyallup face a housing crisis. These communities lack affordable housing and more and more of their citizens are losing, or have lost, stable housing. In Washington State, the fair market value of a two bedroom apartment is $1,229 per month. In Pierce County, one of the most expensive counties in the state, a person working full time would need to earn $21.96 per hour to be able to afford this apartment—far more than the minimum wage. Not surprisingly, the lack of affordable housing is forcing people to live outside.[2]

9. Pierce County's "2017 Point-in-Time Count Results" report identified 1,628 of its citizens as living outside, many of whom are female (38%), are chronically homeless (22%), are victims of domestic abuse (14%), are households with children (25%), are Veterans (9%), are people of color (48% -- though people of color are 24% of the Pierce County population), and are unaccompanied youth and young adults (6%).[3] Many of these individuals also suffer with disabilities including mental illness (31%), physical disability (25%), a chronic health condition

---

[2] "Out of Reach 2017/No Refuge for Low Income Renters," National Low Income Housing Coalition, at page 254, http://nlihc.org/sites/default/files/oor/OOR_2017.pdf. This analysis is based on the United States Department of Housing and Urban Development's recommendation that no one should pay more than 30% of their income for housing:
> Families who pay more than 30 percent of their income for housing are considered cost burdened and may have difficulty affording necessities such as food, clothing, transportation and medical care. An estimated 12 million renter and homeowner households now pay more than 50 percent of their annual incomes for housing. A family with one full-time worker earning the minimum wage cannot afford the local fair-market rent for a two-bedroom apartment anywhere in the United States.

HUD/gov/Affordable Housing, https://www.hud.gov/program_offices/comm_planning/affordablehousing/

[3] Pierce County Human Services, "Homelessness In Pierce County--A Single Night/2018 Point-In-Time (PIT) Count, http://www.co.pierce.wa.us/4719/Point-In-Time-Count-PIT.

COMPLAINT – 4

135829395.7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(24%), substance use (18%) or developmental disability (9%).[4] Seventy-eight percent of these individuals lived in Pierce County before they became homeless.[5]

10. The people surveyed cited the top three causes of homelessness as: (1) lack of affordable housing, (2) inadequate income or employment and (3) eviction.[6]

11. And these numbers are understated.[7] The Point-in-Time Count is conducted between 1:00 am and 5:00 am on a single day of the year in January by volunteers. Volunteers look for people to interview but do not know where many of them are. While some people without homes staying in an overnight shelter may be counted, others will certainly be missed such as people staying temporarily at a hotel with a voucher, families doubling up in a home with another family, people living in vehicles, and people making their homes in camps that are not easily accessible. Many people without homes prefer anonymity, and do not want to be surveyed, particularly families. The Point-in-Time report itself acknowledges its limitations:

> Like all surveys, the PIT Count has limitations. Results from the Count are influenced by the weather, by availability of overflow shelter beds, by the number of volunteers, and by the level of engagement of the people we are interviewing.[8]

The Ninth Circuit Court of Appeals recently recognized that the PIT Count underestimates the number of homeless individuals:

> "It is widely recognized that a one-night point in time count will undercount the homeless population," as many homeless individuals may have access to temporary housing on a given night, and as weather conditions may affect the number of available volunteers and the number of homeless people staying at shelters or accessing services on the night of the count.

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] A study of data from homeless service providers estimated that the annual number of homeless individuals is 2.5 to 10.2 times greater than revealed by a point in time count. National Law Center for Homelessness and Poverty, "DON'T COUNT ON IT How the HUD Point-in-Time Count Underestimates the Homelessness Crisis in America" (2017), https://www.nlchp.org/documents/HUD-PIT-report2017.
[8] *See* footnote 3, *supra.*

COMPLAINT – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

135829395.7

*Martin v. City of Boise*, (slip op. 9th Cir. Sept. 4, 2018) at 6-7.

To try to adjust the count-in-time numbers for people who are inevitably overlooked by the count, some communities apply multipliers to better approximate actual homeless numbers. Pierce County does not.

12. As of late July 2018, there were 1652 homeless persons on Pierce County's housing waiting list.[9]

13. In Puyallup, 773 people self-identified as homeless during the time period August 1, 2017 through July 31, 2018.[10] New Hope Resource Center, Puyallup's only day center for homeless adults, served 500 different individuals in the year 2017.

14. The number of homeless children within Pierce County and Puyallup also continues to rise. For the 2016-17 year, the Puyallup School District reported 430 students who reported having no stable housing.[11]

15. Puyallup, in particular, has done a poor job of providing needed services to its vulnerable unhoused population. The City provides no services to individuals without housing, including no emergency shelter options for individuals exposed to the elements during extreme weather. Because the City provides no services, private organizations provide the only support for these individuals. The only overnight shelter option for individuals in Puyallup or eastern Pierce County during extreme weather is through the "Freezing Nights Program,"[12] which is privately operated and funded by a coalition of Puyallup area churches. This program, which has capacity to serve approximately 70 individuals, houses adults only and operates from November through March. There are no cold weather overnight shelters for children.

---

[9] "A cheaper way to ease Seattle's homeless crisis? Pierce County see promising results," Vianna Davila, The Seattle Times (Aug. 12, 2018), https://www.seattletimes.com/seattle-news/homeless/is-this-a-cheaper-solution-for-seattles-homeless-crisis/.
[10] "Self-Identified as Homeless in Puyallup - Demographic Data - 8/1/2017-7/31/2018," Catholic Community Services of Western Washington (August 20, 2018).
[11] State of Washington Office of Superintendent of Public Instruction, Education of Homeless Children and Youth Data Collection and Reports 2016-2017: http://www.k12.wa.us/HomelessEd/pubdocs/2017_district_enrollment.xlsx
[12] https://puyalluphomelesscoalition.wordpress.com/homeless-outreach-programs/freezing-nights/

COMPLAINT – 6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

135829395.7

16. Puyallup's failure to address the needs of its most vulnerable citizens has exacerbated the housing situation in Puyallup and has forced more and more individuals to rely on outside home solutions. Puyallup has ignored these needs in spite of calls by people in Puyallup to address them. In 2010, a Puyallup community forum asked the Puyallup Homeless Coalition to facilitate a strategic planning committee to study and recommend a strategy for providing emergency housing.[13] A committee was formed and worked closely with Pierce County and local service providers to build a collaborative plan that identified and addressed gaps in resources and services through comprehensive strategies. The committee presented a report, "Puyallup Strategic Plan for Preventing Homelessness," to the Puyallup City Council in 2011.[14] On November 12, 2013, that Plan was updated, and new recommendations were made.[15] The City ignored these reports and recommendations and has done nothing to address the concerns raised or implement the solutions presented. Rather than implementing any positive changes, the Mayor and the City Council have in fact busied themselves enacting counterproductive ordinances and taking actions harmful to the well-being of Puyallup's unhoused citizens.[16]

---

[13] The Committee's report is at https://puyalluphomelesscoalition.files.wordpress.com/2011/08/puyallup-strategic-plan-to-resolve-homelessness-final.pdf.
[14] https://puyalluphomelesscoalition.wordpress.com/strategic-plan/
[15] Puyallup Strategic Plan for Resolving Homelessness (Nov. 12, 2013)
[16] On October 15, 2015, the City Council enacted Ordinance 3098 which expanded the power, previously reserved to law enforcement, to issue trespass notices. That ordinance authorized the City Manager or anyone designated by the City Manager to issue trespass notices.
  On March 22, 2016, the City Council enacted Ordinance 3109 imposing an immediate citywide 180 day moratorium on the acceptance or processing of any land use or other permits for uses that provide services to persons who are homeless. The City has repeatedly extended the timeframe for this ordinance.
  The City Council enacted Ordinance 3110, effective April 13, 2016, which extended the application of the City's "Significant Impact Business" ordinance to include "businesses that provide social services to the homeless." This purported to give the City unbridled and undefined authority to impose financial or other conditions on such service providers beyond those applied to an ordinary business.
  On March 14, 2017, the City issued a decision imposing costly conditions on New Hope Resource Center, the only homeless day center in Puyallup. New Hope provides resources and services to homeless adults such as community links for job possibilities, mental health assistance, medical access, housing possibilities, clothing and meals. New Hope is operated by "Homeward Bound in Puyallup," a non-profit organization that partners with churches, religious and secular organizations, individuals and donors to eliminate homelessness in the Puyallup area.

COMPLAINT – 7

135829395.7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**B.     Defendants Seized and Destroyed the Property of Plaintiffs Nancy Boyle and Glenn Humphreys**

17.     Plaintiffs Nancy Boyle and Glenn Humphreys are individuals whom during the relevant time periods were without indoor homes were forced to make their homes outside. At all relevant times they lived in Pierce County, Washington.

18.     Boyle is 57 years old and was born into a U.S. military family in Germany. Her family moved to Puyallup when she was four years old and she has lived in the area since. Following high school, Boyle was a Certified Nurse Assistant working at nearby hospitals such as Madigan Army Medical Center. Beginning in 2012, Boyle has been unable to work due to significant health problems that require constant medication.

19.     Humphreys is 54 years old and is an Air Force veteran who grew up in Puyallup. After high school, Humphreys attended college and worked in the construction industry. Humphreys has been diagnosed with post-traumatic stress disorder due to his service in the military and requires constant medication.

20.     In early February 2016, Boyle and Humphreys were making their home outside in a camp underneath a large tree on a hillside near Foothills bike trail just south of Pioneer Way in Puyallup.

---

New Hope has appealed the City's decision and the U.S. Department of Justice is investigating the City's actions relating to New Hope as well.

    A city task force created in 2017 comprised of local police officers and city employees launched a pilot program to install portable toilets in a handful of downtown locations to help mitigate issues related to homelessness. But on January 23, 2018, the City Council voted to curtail the program and remove all but one, a decision City Councilmember Jim Kastama bluntly said was intended as a clear signal that Puyallup will not "condone" the behavior of those experiencing homelessness. "Puyallup's latest crackdown on homeless people shows council lacks courage and compassion," Matt Driscoll, The News Tribune (Feb. 15, 2018), http://www.thenewstribune.com/news/local/article200180994.html.

    On September 11, 2018, the City Council gave preliminary approval to a plan that would restrict new homeless shelters and drop-in centers to inside a small limited manufacturing zone in the northwest part of the city that is already developed and is inaccessible to public transportation, so not at all useful for building facilities to serve homeless persons. "Puyallup moves to restrict homeless services to 18 parcels within the city limits," Allison Needles, The News Tribune, (September 12, 2018), https://www.thenewstribune.com/news/local/community/puyallup-herald/article218139975.html.

COMPLAINT – 8

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

135829395.7

21. At the time, the weather in Puyallup was extremely cold. The daytime highs were in the 40°Fs and nighttime temperatures reached below freezing. Seeking protection from the weather, Boyle and Humphreys went to stay at the Freezing Nights shelter. When they returned to their camp on or about the evening of February 4, they observed that almost the entire front of their tent had been cut off, leaving only approximately two feet of tent left around the perimeter. The following morning, they saw a notice on a branch near their tent stating that no camping was allowed and indicating a three-day notice to vacate. The notice had "Puyallup Parks & Recreation" markings on it.

22. The next day, at approximately 9:00 a.m., Officer Jeff Bennett of the Puyallup Police Department arrived and told Boyle and Humphreys that they had approximately fifteen minutes to take what belongings they could and leave. Boyle and Humphreys were told that the camp would be bulldozed and anything left behind would be taken to the dump. They were not given any option of having any of their belongings stored by Defendants much less any instructions for how to retrieve them. Instead, they were told that anything left behind would be destroyed. Humphreys asked for more time to move the couple's belongings, but was told that they would not be given any more time and that if he did not leave, he would be arrested.

23. There were approximately eight police officers present from the Puyallup Police Department and from the Pierce County Sheriff's Office. Three police cars were parked at the encampment and two more were parked further down the bike path, as well as a Pierce County pickup truck and a dump truck with Pierce County markings. In addition, there were about eight other persons, some of whom appeared to be associated with Pierce County and who were wearing reflective vests. A number of these people had garbage bags or cans with them.

24. Boyle and Humphreys took what they could with the help of a friend. The encampment was not visible from the trail or the road, but was set back from the trail in an area with trees and swamp, so it was not easy for their friend to drive close to the camp or for them to haul away their property. While Boyle and Humphreys were still in the process of loading their

COMPLAINT – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

friend's van with their possessions, Defendants' crew began to indiscriminately seize and throw away Boyle's and Humphrey's property.

25. Boyle and Humphreys were unable to move all of their belongings and lost property critical to outdoor survival, including bedding, clothing, shoes, a cellphone, tent, tarps, cooking tools and medications. Defendants seized and trashed Boyle's and Humphreys' irreplaceable and highly sentimental property, such as pictures of children and family. Defendants also seized and trashed important legal paperwork necessary to establish identity and receive services such as such as Humphreys' Veteran's Administration ("VA") documentation needed to receive VA services, medical records, and Humphreys' social security card; likewise, Defendants destroyed Boyle's birth certificate from Germany, her naturalization papers, medical records and an expired passport that she used as identification. Finally, Defendants seized items Humphreys used for employment as a roofer, including valuable roofing tools. He also lost other tools he used for basic living, including tools to build a shelter and tools for his bicycle, his only form of transportation.

26. Boyle and Humphreys did not abandon their property. Rather, their property was seized and destroyed by Defendants and they were not allowed to retrieve their property once Defendants had taken it. They were also not given any opportunity to contest the seizure and destruction of their property, nor to retrieve their valuable possessions. They were not offered any storage for any of their items.

27. Defendants' seizure and destruction of Boyle's and Humphreys' property has had a significant impact on their health and well-being. Defendants' seizure occurred in February, which is typically one of the coldest months of the year in Pierce County. The loss of their tent, blankets, and other items necessary for living outdoors made them totally dependent on Freezing Nights since they no longer had a home. Likewise, the loss of cooking equipment made it impossible for Boyle and Humphreys to cook and make their own food. The loss of medications exacerbated their medical problems; it took them weeks to replace the medications. Due to the

COMPLAINT – 10

135829395.7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

loss of Humphrey's tools, he had no choice but to turn down employment opportunities. The loss of Boyle's identification cards has hindered her. Many of Boyle's and Humphrey's personal possessions have never been replaced either due to the cost to replace or the fact that many are simply irreplaceable.

C. **Defendants Seized and Destroyed the Property of Plaintiffs Jerome Connolly and Christian Rainey**

28. Plaintiffs Jerome Connolly and Christian Rainey are individuals whom during the relevant time periods were without indoor homes and were forced to make their homes outside. At all relevant times they lived in Pierce County, Washington.

29. Connolly is 34 years old and has lived in the Puyallup area for about twenty years. Following high school, Connolly entered the construction industry and in April 2015, he suffered a significant job injury. Due to his injuries, he was unable to continue work and lost his residence. His injuries required medication.

30. Rainey is 51 years old and has lived in the Puyallup area for over twenty years. Rainey has suffered from significant health problems, including renal failure, ongoing infections, kidney stones, a herniated disc, sciatica, and schizoaffective disorder. She requires constant medication.

31. In or around May-June 2016, Connolly and Rainey were making their home outside on a piece of land believed to be owned by the county just off McCutcheon Road near 106th Street East in Puyallup. The site they lived on was well off the road and was not accessible by car.

32. The following day, after being temporarily away from their camp, Connolly and Rainey returned to find their belongings destroyed. Their tent (and all of their personal belongings inside it) appeared to have been completely run over by a bulldozer. They observed bulldozer tracks at the site and their tent and belongings inside had been crushed.

COMPLAINT – 11

135829395.7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

33.     In addition, Connolly and Rainey observed a sticky orange residue sprayed onto their belongings and nearby plants. Upon information and belief, the people who sprayed their belongings were the same people who bulldozed and destroyed their belongings. The spraying and bulldozing happened on the same day.

34.     Connolly and Rainey observed notices stuck on branches near their camp indicating that someone had sprayed for noxious weeds in the area. The notice appeared to be from Defendant Pierce County.

35.     Defendants destroyed Connolly's and Rainey's personal possessions critical to their survival such as their tent, clothes, bedding, chairs, cots, cooking utensils, a stove and propane, a computer, a phone, medication and medical supplies, and important personal identification paperwork including documents from the Washington State Department of Social and Health Services, the Social Security Administration and their banks.

36.     Connolly and Rainey did not abandon their property. Rather, their property was seized and destroyed by Defendants who did not give Connolly and Rainey notice that their property would be destroyed. They never saw a "no camping" or eviction notice. They were not given any opportunity to contest the seizure and destruction of their property, nor to retrieve their valuable possessions. At no time were they offered any storage for any items.

37.     Defendants' destruction of Connolly's and Rainey's property has had both immediate and long terms impacts on them. At the time of the bulldozing, Connolly was suffering from a serious infection that required antibiotics and other medications. In the bulldozing, Defendants destroyed the medications; this exacerbated Connolly's medical problems. Likewise, Defendants also destroyed Rainey's psychiatric medications which she could not replace for weeks. This created significant health problems for her. The loss of their tent and personal possessions took away their shelter, their ability to cook food, and their ability to have privacy to bathe and change clothes.

COMPLAINT – 12

135829395.7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**D.     Defendants Seized and Destroyed the Property of Nicki Wedgeworth and Terry Linblade**

38.     Plaintiff Nicki Wedgeworth and Terry Linblade are individuals whom during the relevant time periods were without indoor homes and were forced to make their homes outside. At all relevant times they lived in Pierce County, Washington.

39.     Wedgeworth is 50 years old.  She was born, and has lived, in Pierce County most of her life. She has lived mostly in Puyallup since 2015.  Wedgeworth suffers from significant health difficulties, including PTSD, depression, anxiety, and is bipolar.  She has had multiple surgeries, and suffers from neck and back problems.  Her disabilities render her unable to work.

40.     Linblade is 55 years old and has resided in Pierce County since 1981.

41.     Wedgeworth and Linblade have been the victims of several sweeps.  In approximately April 2017, Wedgeworth and Linblade were camped near the Puyallup Riverwalk Trail.  Officer Bennett and another person came by and told them that they needed to move. Linblade was told that if they did not move they would be trespassed and would go to jail. Wedgeworth and Linblade packed up their possessions in backpacks and boxes and placed them under tarps ready to move.  While they were in the process of moving their possessions to another location and were away from their camp, Officer Bennett's crew removed their possessions from their camp site and dumped them into a truck. When Wedgeworth and Linblade returned to their camp, all of their possessions were gone.  At no time were Wedgeworth or Linblade offered any storage for any items.  They were not given any opportunity to contest the seizure and destruction of their property, nor to retrieve their valuable possessions.

42.     Wedgeworth and Linblade lost most of their possessions in this sweep including irreplaceable family photos, social security and DSHS paperwork, medical treatment information, a GED certificate, mail, shoes, boots, coats, pajamas, jeans and other articles of clothing, tables, dishes, tents, tarps, tools, machetes, blankets, pillows, towels, bed, camp stove,

COMPLAINT – 13

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

135829395.7

fishing pole, dishes, pots, pans, silverware, bicycle, cooler, camp chairs and other personal possessions. Wedgeworth's mental health medications were also destroyed and accordingly, she went without medication for at least a month.

43. Wedgeworth and Linblade then moved to another location near the Riverwalk Trail behind a Safeway. In mid-July 2017, Officer Pigman and another person came to their encampment and told Wedgeworth that they would have to move. Two days later, Officer Bennett and another person came out and told her she would have to move. On approximately July 17, police gave them a notice to vacate within 72 hours. Officer Bennett returned with a cleanup crew and a big truck before the 72 hour deadline had expired. Wedgeworth was told she had to get what possessions she wanted to take out to the River Trail fast or they would be put in the truck as the crew was on a time limit. She moved what she could in that short time, but could not move all of her things. The rest was taken and destroyed. At no time was she offered any storage for any items. Wedgeworth and Linblade were not given any opportunity to contest the seizure and destruction of their property, nor to retrieve their valuable possessions.

44. Wedgeworth and Linblade lost many possessions in this sweep including mattresses, a table, a barbeque, chairs, a tent, tarps, rugs, two bicycles, food, dog food, a cooler, sleeping bags, tools, a camera and a jewelry box and jewelry.

**E.  Defendants' Practices Jeopardize the Health and Safety of Unhoused Persons**

45. A large percentage of persons not living in outside homes have or are at serious risk of health problems. This risk is greatly increased by several factors, including lack of shelter and warm clothing, especially during winter months when it is cold and rains, where individuals have preexisting health conditions, and for people of advanced age.

46. The danger created for unhoused individuals by the seizure and destruction of their property, including the most basic necessities like medications, clothing, shoes, tents, tarps, and blankets, is exacerbated in winter. Pierce County winters feature frequent rain, daytime temperatures below 50°F and nighttime temperatures often below freezing. The weather can also

COMPLAINT – 14

135829395.7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

include extremes such as snow storms and subfreezing daytime temperatures. This weather magnifies the risk of hypothermia and other illnesses for unsheltered individuals.

47. Protection from cold and rain is a basic human need; exposure risks illness and death. Defendants are well aware of the dangers that individuals living outside face, yet they knowingly maintain a practice of seizing and destroying property critical to the health and shelter of unhoused persons.

**F.   Defendants' Practices Violate Their Own Policies and the Law**

48. The Puyallup Police Department has adopted a formal written policy regarding protecting and safekeeping the property of homeless persons. That policy provides, for example, that police personnel "should not destroy or discard the personal property of a homeless person," that they "should make reasonable accommodations to permit the [homeless] person to lawfully secure his/her personal property," and that "the personal property should be collected for safekeeping."[17] Nonetheless, Puyallup's officials, employees and agents have systematically violated that written policy.

49. Plaintiffs are informed and believe that Defendants have failed to adopt, and/or enforce, policies and practices adequate to safeguard the property of individuals who lack stable housing. Plaintiffs are informed and believe that Defendants are not adequately training their personnel and agents about proper and lawful procedures for carrying out sweeps and for safeguarding and handling the property of these individuals.

50. The United States Interagency Council on Homelessness ("USICH"), an organization composed of nineteen federal cabinet and agency heads to advance federal collaboratives to end family homelessness,[18] has recognized that sweeps and destruction of property are harmful and counterproductive. The USICH report, "Ending Homelessness for

---

[17] *See, e.g.*, Puyallup Police Department Policy 426.4 (adopted August 26, 2015).
[18] https://www.usich.gov/.

COMPLAINT – 15

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

135829395.7

People Living in Encampments," finds that "forced dispersal" of encampments is inappropriate and undermines the goal of linking people to permanent housing opportunities.[19]

51.     As a direct and proximate result of the unconstitutional and unlawful policies, practices, and conduct of Defendants, Plaintiffs have suffered and will continue to suffer damages, including but not limited to deprivation and destruction of property, leaving them without essential belongings necessary for shelter, health, emotional and physical well-being, personal dignity, and causing them to lose important legal documents and irreplaceable personal belongings of substantial sentimental value.

52.     Defendants' practices and conduct of refusing to give reasonable or advance notice before they remove or destroy encampments, of confiscating or destroying individuals' personal property, and of refusing to safeguard the personal property of these individuals and give them specific notice of where and how they can retrieve their personal property after it has been removed, also caused, and unless preliminarily or permanently enjoined, will continue to cause, humiliation, psychological, physical, and emotional suffering, degradation, pain, injury, financial and property loss, and loss of liberty, due process, and privacy to Plaintiffs.

53.     The actions and omissions by Defendants' officials, employees and agents complained of herein were committed by persons acting under color of state law.  These actions and omissions deprived Plaintiffs of rights, privileges and immunities secured by the Constitution and laws of the United States.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION—**
**Fourth Amendment to the United States Constitution**

54.     Plaintiffs hereby restate and reallege the allegations set forth in the preceding paragraphs and incorporate them herein by reference.

---

[19] *See* https://www.usich.gov/resources/uploads/asset_library/Ending_Homelessness_for_People_Living_in_Encampments_Aug2015.pdf.

COMPLAINT – 16

135829395.7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

55. Defendants' above-described policies, practices, and conduct violate Plaintiffs' right to be free from unreasonable searches and seizures and meaningfully interfered with the Plaintiffs' possessory interests in their property under the Fourth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment and 42 U.S.C. § 1983.

56. As a direct and proximate consequence of Defendants' unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to damages.

**SECOND CAUSE OF ACTION—**
**Fifth and Fourteenth Amendments to the United States Constitution**

57. Plaintiffs hereby restate and reallege the allegations set forth in the preceding paragraphs and incorporate them herein by reference.

58. Defendants' above-described policies, practices, and conduct violate Plaintiffs' procedural right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, in that they caused Plaintiffs to be deprived of their liberty and/or property interests without adequate procedural protections.

59. Defendants have seized and destroyed Plaintiffs' personal property without due process, lawful justification, or just compensation.

60. As a direct and proximate consequence of Defendants' unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to damages.

**THIRD CAUSE OF ACTION—**
**Conversion**

61. Plaintiffs hereby restate and reallege the allegations set forth in the preceding paragraphs and incorporate them herein by reference.

62. Plaintiffs were at all relevant times the owners of personal property confiscated and/or destroyed by Defendants as alleged above. Plaintiffs remain entitled to the possession of their personal property.

COMPLAINT – 17

135829395.7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

63. Defendants' conduct deprived Plaintiffs of their possessions.

64. Plaintiffs are entitled to damages for the destruction and loss of their property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

A. Issue preliminary and permanent injunctions enjoining and restraining the Defendants from continuing or repeating the unlawful policies, practices, and conduct complained of herein;

B. Award compensatory and punitive damages, in amounts to be determined at trial, against all Defendants;

C. Award Plaintiffs their costs and attorney fees pursuant to 42 U.S.C. § 1988; and

D. Grant such further relief as the Court deems equitable.

RESPECTFULLY SUBMITTED this 14th day of September, 2018.

By: s/ *Sherilyn Peterson*
By: s/ *David S. Steele*
Sherilyn Peterson #11713
David S. Steele #45640
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Email: SPeterson@perkinscoie.com
          DSteele@perkinscoie.com

*Attorneys for Plaintiffs*

COMPLAINT – 18

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

135829395.7